22-5231 Barbara Kowal v. United States Department of Justice, et al. 22-5287 Barbara Kowal v. United States Department of Justice, and Drug Enforcement Administration Freedom of Information Request, PA Units. Mr. Kelly, for the Abellant, you may begin your break. Good morning, Mr. Kelly. Good morning, Your Honors. May it please the Court, Matthew Kelly for Plaintiff and Appellant Barbara Kowal. Your Honors, as you know, the goal of FOIA is to open the federal government agencies and their records to public scrutiny. As the Supreme Court has said, it is a disclosure statute, not a withholding statute. The government has the burden to justify its withholding. In this case, Plaintiff Appellant Barbara Kowal is seeking records from three federal law enforcement agencies to aid in the appeals of a federal death row inmate, Daniel Troia. Releasing these records will shed light on how DEA, FBI, and ATF performed their statutory duties in this capital murder case. Burdens of persuasion, production, and proof are key to both appeals. Kowal has met hers. The Court should remand so that the government can be required to meet its burdens. I'd like to focus on just a few of the most important examples. First, I'd like to discuss an erroneous attempt to shift the burden on the public domain doctrine. Next, I will discuss how Kowal has met her burden to show that the inadequacies in the searches performed by the DEA, FBI, and ATF and the government has not met its burden to show beyond material doubt that their searches were reasonable. Then, regarding the law enforcement privacy exemption 7c, I will discuss how Kowal has met her burden to show the public interest overrides any minimal privacy interest held by witnesses who testified in Mr. Troia's trial. Finally, I will highlight that the government has not met its burden to show that cooperating witnesses who testified spoke to agents under express or implied assurance of confidentiality. First, for the public domain doctrine, a large portion of the information being withheld in this case should be released under the public domain doctrine. The public domain doctrine holds that the government can't withhold information that's public if it's in a judicial record, for example. The binding law of this circuit is that the information is in the public domain. It cannot be withheld even if a FOIA exemption would otherwise apply. But it has to have been disclosed and maintained in a permanent public record and it has to be an exact copy of what is in the public and I'm not sure you've made that show. Judge Pillard, the standard is that it is information that is in the public domain rather than a document-by-document analysis. The burden that the plaintiff has in this situation is to identify specific information in the public record that appears to duplicate that being withheld. It's not an impossible burden. The plaintiff can't know precisely what is in the government documents that the government is withholding. So her burden of production in this matter is to show that there is specific information that appears to duplicate what apparently is being withheld. She has done so.  Does this continue to be available in the clerk's office or on the public docket or elsewhere publicly? I don't believe so, Your Honor, but I don't believe that that matters. For example, this court's holding in Catone v. Reno says that in that case the issue was tapes that were played at a trial. This court said that once a tape was played, it had to be maintained. I'm looking at the same case. It has to be maintained in a permanent public record. I'm just wondering whether you have identified where the relevant material is maintained in a permanent public record. It would be maintained in the clerk's office in the Southern District of Florida. Although I think that once... Have you shown that? If you have, I've shown that. I don't believe that we have, Your Honor, but I also don't think that the record-keeping practices of district courts should override the fact that once something is put forward, put into the public domain in a public trial, it is public. But we have this other case, Students Against Genocide v. Department of State, 257 F. 3rd, 828, in which we noted that even documents that were displayed in public but not released and permanently available, those fall outside the public domain doctrine. Students Against Genocide is very easily distinguishable. The records at issue in that case were photographs that the U.S.-UN ambassador showed in a, I believe, a U.N. Security Council hearing. They were not made part of the record of that hearing and were not otherwise made public. That was not a federal trial. Obviously, the FOIA and the First Amendment and common law rights of access to records in this country don't apply to the United Nations. So that's a very different case, Your Honor. And as this court noted in Katone, because of the right of access to judicial records, there is a public right of access to these records regardless. And that is another reason why they are in the public domain. The public has an independent right under the common law and the First Amendment to access these judicial records. So the facts inside them shouldn't be able to be withheld by the government under FOIA. Mr. Kelley, I have a question about your argument about the adequacy of the searches and, in particular, the failure to search for the alias. The request is framed as seeking all documents, files, records pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and or parole of Daniel Troyer, aka Homer. And I guess my question is, is there any reason to believe that any of the agencies would maintain a file or document relating to this individual's investigation, arrest, indictment, conviction, sentencing, incarceration, and or parole under an alias? The question is not necessarily whether they would keep a record specifically listed under that alias and nothing else. Why not? The issue is, did they do an adequate search that would capture all of the relevant records? Right, but the relevant records, as your request defines them, are records of governmental action, investigative or arrest or prosecutorial action directed at this individual. And so is it possible that there is an arrest record or an investigation record that is kept under the name Homer as opposed to one that is kept under the name of Daniel Troyer? Well, we've cited in our papers a number of cases in which the government did do searches using aliases. Right, and there are situations in which an alias search will, in fact, turn up documents. And here, if it was any documents mentioning in any way Mr. Troyer, a.k.a. Homer, then it seems to me much more plausible that a text search would turn up something different if he's one of the people present when someone else is being surveilled. And so it's going to be the other person. It's indexed under the other person's name, but some guy named Homer is there. You could see a text search in ECF turning that record up, but that is not a record pertaining to an investigation, arrest or the like of Homer. It's a record in which his name shows up, but it's pertaining to an investigation of someone else. So I'm just saying that the way that you framed the request, I'm trying to imagine how a search using the alias could plausibly turn up documents that weren't turned up under the name search. Well, I think that the law is that the government has to interpret FOIA requests broadly. And if you narrow it to kind of parsing the word pertaining to, yes, perhaps that would limit the search to documents that are kind of indexed to that person and that person and indexed to that person rather than other documents indexed to other people that might mention either Mr. Troia or him by his alias of Homer. And it's that second category of documents that we believe should be part of this request. Perhaps the request was not worded as artfully as it should have been. But the fact remains that the government has an obligation to interpret requests broadly and not narrowly. And we don't believe that that was done. So are you asking us to drop any investigation, arrest, indictment, conviction, sentence, incarceration and or parole of? Is that the lenience that you want in terms of how we read the request? Not drop, not drop that from the request, but interpret it broadly as being seeking records pertaining to that individual, whether it's indexed under his name or not. Mr. Kelly, why isn't the solution to that to just simply bring to file a different FOIA request, a second FOIA request for that precise information? That's certainly something that could be done, Your Honor. Um, I think that, um, in the interest of efficiency, Is it really efficient to come to court and litigate all of this before bringing a second request to the agency? Maybe that would simply just turn up what you're looking for. Well, I think that, um, you know, as you know, there are a number of issues in this case. And I think litigating through the issues in, indeed, it's two consolidated cases, litigating through all of these issues, you know, once is better than multiple times. And I think that's one of the reasons why the government is required to treat, interpret FOIA requests broadly, because we don't want to have to be litigating these things again and again and again. I don't think that's a good use of the government's resources or the judiciary's resources. Broad is one thing, but, you know, in terms of what it's looking for, I mean, you know, if a party seeks certain type of information, I don't think the government is required to boil the waters in order to, you know, interpret it to mean anything that might refer to an individual mentioned in the FOIA request. I mean, that doesn't seem efficient for the government or for taxpayer resources in responding to FOIA requests. Yeah, true. And we're not asking the government to boil the ocean, Your Honor. But what we are saying is that in this case, the request, I think, reasonably interpreted broadly, as the law requires, would pertain to those records that are not indexed directly under Mr. Troy's name. And there's another problem with the searches, too, and it's, I think, a larger one, and that's the fact that none of the searches turned up any multimedia documents, no photographs, no recordings, no audio recordings, no video recordings, nothing like that. And despite the fact that the request specifically requested those kinds of materials, and in the court below, Ms. Cowell provided a list of 200 such materials that the judge acknowledged reading in the DEA case and said that it provided some support for the idea that the search wasn't diligent enough because it did not turn up these whole entire categories of types of records. But the court below said that just because Ms. Cowell has them doesn't mean that the DEA still has them. But that begs the question, does the DEA still have them? The judge's question assumed that the DEA did, in fact, have them at some point. And only the DEA can answer that question. They're the agency that holds the documents that are being withheld. We can't know what the agency is. And I think that the case should be remanded, among other things, to determine whether the fact that there were no multimedia files produced shows that the searches were inadequate. And we believe that that is the case. If I can move to... I see that I am in my rebuttal time. And unless your honors have any other questions, I will turn it over to the government. Thank you, Mr. Simon. May it please the court, Jeremy Simon with the U.S. Attorney's Office on behalf of the appellees. I would like to just address the two principal issues that counsel has addressed to the court just now. On the public domain issue, the principal argument concerns the playing of these recordings in court. But the document they're seeking to obtain under the public domain exception, based on those recordings, is not court recordings, or not tapes of recordings, or even a transcript of recordings. It is a narrative summary of a case initiation that is a compilation of information from a variety of sources and techniques. And the court can see that description in the Vaughn Index in the appendix in 22-5231 at the appendix 215 to 216. And the declaration that discusses that is at appendix 190, paragraph 15. And then there's also some other paragraphs that talk about other FOIA exemptions being asserted over the same information, which again demonstrates this is a compilation of information from a variety of sources. So the exactitude requirement of the public domain doctrine does not apply. In terms of the other sort of iteration of the public, what they call public domain, are the names appearing in, the names of people who testified at trial. That is addressed very clearly by this court already in the Crew v. DOJ case 854-F3D. 675, that's not a public domain argument. The court in that case very clearly said that individuals who testify at trial still have a privacy interest in not being connected to specific documents in a criminal investigative file. Also, just want to emphasize the public domain doctrine is a narrow exception. And therefore, a very specific showing is needed by the case law in order to, for the plaintiff or the requester to meet their burden there. Mr. Simon, I have a question about the government's arguments under Exemption 7D regarding confidential sources. And the Supreme Court in Londano rejected kind of categorical, you know, certain witnesses are going to be treated as having implicit assumption of assurance of confidentiality. And how does that not defeat the government's position here? I believe, Your Honor, that Londano in that case, I believe the government had said anyone who speaks to the FBI is entitled to implicit confidentiality. And the Supreme Court said that is not sufficient. But the Supreme Court recognized that there could be certain categories of cases where the implication would be established. And in this court's case, Hodge v. FBI, the court held that the violent nature of a crime where there's a threat of reprisal, which this crime fits squarely, it's a murder of a family on a roadside in connection with overarching drug operation, violent drug operation. So when you have that type of underlying crime that is at issue, I think Hodge establishes that there is an implied confidentiality. In terms of the search regarding the overlooked record issue that counsel raised, just to note, first of all, that document, the list only was provided in the DEA case, it wasn't provided in the ATF slash FBI one that's under 22-5231. But aside from that, the list is in the appendix for the DEA case, appendix 129 to 33. And if you look at that list, counsel or Caldwell has said it's 200 overlooked records, but there's nothing to indicate that they were ever in the possession of DEA. And if you look at the titles of the types of documents that are listed there, I think only a handful have DEA in the title. Many of them relate to prison calls or the activities of state and local law enforcement. Court may recall there were approximately four state and local law enforcement entities involved in this investigation. And so they have not met the burden to show that to the extent anything could be established from there, that there was just a handful of documents with the DEA in the title. I'm sorry, you said there were four state and local law enforcement agencies. In other words, in addition to the three defendant agencies in this appeal, there was a state law enforcement agency involved? In the investigation of this crime. So is the implication that the multimedia information that they're seeking and that they're pointing to as overlooked documents, that call into question the reliability of the search, is your implication that those were generated and are maintained by a state agency? That is certainly a possibility. And I think the titles of those documents, a lot of them refer to detectives from the various state and local law enforcement agencies, would certainly create that implication. But ultimately, it's the plaintiff's burden to show that there was some indicia on these documents to suggest that the source was DEA. So wasn't there, though, an exhibit list in the federal case that listed some or more of these documents? And I thought that was evidence that these are in the possession of the federal officials. Well, I think the document I'm referring to, Your Honor, is at appendix 129 to 33 in 22-5278, I believe is the case number. And that's the list that the district court understood to be Allwell's list of the so-called overlooked materials that they did not, that they allegedly have in their possession from their criminal discovery file that were not produced. But then there's an assertion, I believe, that there was an exhibit list on which some of these documents appeared. That, I believe, Your Honor, pertains to the public domain argument where Caldwell was trying to suggest that documents had been entered in evidence as exhibits. And therefore, the government has no basis to withhold them, even though they would otherwise be exempt because they relate to third parties. And that was, I believe, in the context of the public domain argument, not in the context of the search. If the court has no further questions, we would just rest on our briefs and ask that the judgment below be affirmed. Thank you. I'd like to start with government counsel's citation to the Crewe case. The one cited to is essentially kind of the second iteration of that case. And what the counsel for the government did not mention was that in that case, this court held that the presumption against disclosure of the names of third parties in law enforcement documents does not apply to people who have been publicly identified, including via testimony in open court, as having been charged, convicted, or otherwise implicated in a crime. That's at age 54 F second, F third, excuse me, 682. So, you know, even the case that they're that they're citing shows that, you know, the privacy interests that people who testify a trial, for example, are minimal. They're not zero, but they are minimal and they are overcome by a showing of public interest in the records that are being withheld. And we have shown that the interest here is showing how these law enforcement agencies perform their statutory duties in a capital case. Secondly, counsel for the government acknowledged that some of the multimedia records on the list provided to the court do have indications that they were from the DEA. That's enough. That's not zero. I would submit that that is enough to remand and require the government to do a diligent search that it should have done in the first place. We're not, you know, we don't have the burden to show, you know, by name and number every single document that they didn't provide. Our argument is they did not provide an entire category of types of materials. And that is evidence that the search itself was inadequate. I see my time has expired. Thank you, Your Honors, very much.
judges: Henderson, Pillard, Rao